**HENRY MANUFACTURING CO., INC.,**
an Ohio corporation, Plaintiff,

v.

**COMMERCIAL FILTERS CORPORA-
TION, a corporation of New York,**
Defendant.

No. IP 67–C–221.

United States District Court,
S. D. Indiana.

April 13, 1971.

T. P. Jenkins, Indianapolis, Ind., for plaintiff.

Harold Hood, Indianapolis, Ind., for defendant.

## MEMORANDUM OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

NOLAND, District Judge.

· This is an action for patent infringement. The plaintiff complains that certain apparatus manufactured and sold by the defendant infringe claims 34 and 35 of plaintiff's United States Letters Patent No. 2,861,688 granted November 25, 1958, and entitled "Liquid Clarification System."

It has been stipulated by the parties that the plaintiff, a corporation of Ohio, is the owner of the patent in suit.

Defendant, at the time suit was filed, was a corporation of New York. The defendant is now a Division of the Carborundum Company, a corporation of Delaware.

It is uncontested that the plaintiff marked all or essentially all of its filtering apparatus by attaching a name plate similar to PX6 to give constructive notice to the public. It is also uncontested that defendant had notice that the plaintiff alleged an infringement of its patent.

This Court has jurisdiction of the parties and subject matter of this action under Title 35 U.S.C. §§ 271, 281, and under Title 28 U.S.C. §§ 1338, 1400.

Trial of this action before the Court occupied three days, commencing on November 30, 1970. Thereafter, post-trial briefs were tendered by the parties. The following Memorandum Opinion contains the Findings of Fact and Conclusions of Law pursuant to Rule 52(a), Federal Rules of Civil Procedure.

### The Patented Apparatus.

The patent in suit related to an apparatus for clarifying liquid coolant used in connection with cutting and grinding tools to keep the tools as well as the material on which the tools operate from overheating. The apparatus includes upper and lower tanks with the upper tank extending into or nesting in the lower. Separation of lighter particles is performed in the upper tank by reducing the flow of the contaminated liquid so that flotsam or lighter particles will remain on the surface where, by either the entrance of the flowing liquid into the end of the pool or by mechanical means, the flotsam is driven to one end of the tank. Simultaneously, larger sized heavier contaminants settling from the coolant are stopped by a filter screen which forms a part of the upper tank's bottom. These settled contaminants form a filter bed on the filter screen through which the liquid must pass. A float-controlled scraper or wiper-type conveyor which moves a short distance when the liquid level in the upper tank rises to a certain level scrapes along the top of the screen at the bottom of this upper pool to prevent the filter bed from becoming too thick and reducing the rate of flow of the liquid through the screen. As this conveyor removes settlings up a ramp, it simultaneously removes flotsam which has accumulated at the end of the tank. A settling step is effected in the lower tank into which the filter directly discharges filtered liquid containing those finer, heavier solid particles which were not retained on the screen or in the filter bed. Those contaminants which sink to the bottom of the second or "clean"

liquid chamber are removed by a second conveyor means up a second ramp. The discharge of this second pool is effected by the flow of liquid over weir edges which maintain the liquid level in the second pool.

*Plaintiff's Activities.*

The drawings of the patent in suit show an apparatus essentially like the Henry Separator S/N 61 (PX8) sold to Buick Motors in August of 1955. PX9, a separator sold to Westinghouse in November of 1955, embodies only one significant difference, replacement of the single overflow edge by a multiplicity of overflow edges. Both systems contained a filter medium. In 1956, the plaintiff changed its clarification system as evidenced by PX10, a separator sold to Cummins Engine. The two tanks were no longer nested but were situated side by side. Additionally, the filter screen previously employed was eliminated. This arrangement was again used in a separator sold to Cadillac Motors in May of 1956, PX11. PX12 depicts an apparatus manufactured by the plaintiff and sold to the Detroit Diesel Division of General Motors in January of 1967. The only difference between this separator and those depicted in PX10 and PX11, is the means employed to eliminate floating contaminants. The skimming conveyor previously employed was replaced by a trough. By periodically raising the liquid level flotants would flow into the trough from which they are pumped and treated separately.

It is clear that the commercial machine which evolved and was marketed by the plaintiff, (PX12, PX14) is substantially different from the device specified in the patent. It is noted that Eugene Harms, President of Henry Manufacturing, stated that the filter screen was eliminated because "many of them (the units) didn't work." (Transcript, Vol. I, p. 18).

*Defendant's Accused Apparatus.*

Plaintiff alleges that defendant's separators as characterized by PX13 and PX15 infringe claims 34 and 35 of the patent in suit. The Commercial Filters Separator depicted in PX13 is all but indistinguishable from the Henry Separator depicted in PX12, i. e., a side by side tank and no filter means and with a trough rather than a skimming conveyor. The Commercial Filters Separator depicted in PX15 and marketed under the name of "Tube-O-Matic" incorporates only one significant difference from the Henry Separator depicted in PX12 or the Commercial Filters Separator of PX13. Instead of the V-shaped weirs, the defendant's separator employs circular weirs.

*Discussion Summary.*

The marked similarity in the commercial adaptations of the two separators manufactured by the plaintiff and defendant must not be permitted to obscure the issues in this case. In the opinion of this Court, both of these separators incorporate an aggregation of old elements. Rather than a new and unique result, we have only an improved liquid clarification system to be used in connection with cutting and grinding tools. The use of the prior art is as available to the defendant as it is to the plaintiff.

The following discussion by the Court points out that claims 34 and 35 of the patent in suit are invalid and void. What we have here is an application of fundamental principles involved in the law of gravity with the use of settling tanks and skimming means to deal with materials of different specific densities.

Mankind has made use of such knowledge over a long period of time for metallurgical treatment purposes, sewage separation and straining, and a wide variety of industrial uses as disclosed by many patents processed through the United States Patent Office. To recognize the validity of claims 34 and 35 of the Harms patent would result in a withdrawal of elements of fundamental knowledge into an area of monopoly; thus, improperly diminishing the resources available for use in the field of liquid clarification.

In examining the other patents and the prior art, it is the conclusion of the Court that the terminology may change but many of the interrelated fundamental principles remain the same.

*Validity of Claims 34 and 35 of Patent No. 2,861,688.*

■ While a presumption of validity attaches to the patent in suit, that presumption is greatly weakened where it is shown, as it is here, that pertinent prior art was not cited by the Patent Office. Skirow v. Roberts Colonial House, Inc., 361 F.2d 388 (7th Cir. 1966). The presumption of validity of a patent does not exist as against evidence of prior art not before the Patent Office. T. P. Laboratories, Inc. v. Huge, 371 F.2d 231 (7th Cir. 1967).

■ A machine composed of elements of the prior art is patentable if the combination produces a new and useful result. However, a mere aggregation of old elements which in their new combination perform no new function and achieve no new result is not patentable. Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008. As stated by the Supreme Court in Great Atlantic & Pacific Tea Company v. Supermarket Equipment Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162:

"A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what is already known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly."

Combination patent claims are to be scrutinized with a care proportioned to the difficulty and improbability of finding an invention in the assembly of old elements. Great A. & P. Tea Co. v. Supermarket Equipment Corp., supra. A rather severe test must be applied. Toro Manufacturing Corp. v. Jacobsen Manufacturing Co., 357 F.2d 901 (7th Cir. 1966). However, the issue of obviousness is not to be resolved on the basis of hindsight. Ever-Wear, Inc. v. Wieboldt Stores, Inc., 427 F.2d 373 (7th Cir. 1970).

■ Examination of the teachings of prior patents make it clear that the patent in suit is invalid for want of invention over the prior art. If construed to be of scope sufficient to embrace the defendant's clarification apparatus, the patent in suit is invalid because the subject matter thereof does not involve invention:

(a) Over the teachings of Herman 2,-469,197, in that the Herman patent discloses a tank with a continuous conveyor which removes from a liquid heavier particles which settle in the tank. Lighter weight particles which float on the liquid are driven by a conveyor chain with flanges to a point at which they encounter the conveyor chain which removes the heavier particles. The clarified liquid leaves the chamber under a baffle and flows over a weir to its removal point.

(b) Over the teachings of Ashmead 1,909,159 in that the Ashmead patent utilizes a tank. The Ashmead patent does not attempt to clarify the liquid which does not in fact flow through the tank but rather utilizes the specific gravity of the chosen liquid to separate dry solids introduced into the tank. Ashmead removes the solid materials by two separate conveyors.

(c) Over the teachings of Marshall 1,990,458 in that Marshall utilizes an endless conveyor to sweep floating contaminants along the surface of the liquid in the tank in order to position them for removal by periodically sweeping them into a box at the end of the tank. The Marshall patent also utilizes a settling means in which heavier particles are swept along the bottom of the tank by the same conveyor.

(d) Over the teachings of Lind 2,509-933 in that Lind utilizes a continuous conveyor for scraping settled contaminants to a position for removal and also utilizes the welling up of liquid through a series of square openings which have a saw-toothed weir. The liquid flows over these notches into a series of channels which lead to an outlet pipe.

(e) Over the teachings of Schmidt 828,515 in that Schmidt utilizes the welling up of liquid over weirs from which it flows into troughs.

(f) Over the teachings of Landreth 1,483,667 in that Landreth utilizes a perforated screen through which the liquid is allowed to flow so that the screen catches contaminants. A series of brushes on a continuous conveyor are utilized to brush off the screen in order to keep the openings relatively clean.

(g) Over the teachings of Symington 2,162,262 in that Symington effects the removal of clarified liquid by allowing it to flow over a weir into a trough.

The United States Court of Appeals for the Seventh Circuit stated, in Akron Brass Company v. Elkhart Brass Manufacturing Co., Inc., 353 F.2d 704 (7th Cir. 1965):

"[O]bviousness does not require that the combination of prior art references precisely duplicate the patented article. It is sufficient that the subject matter of the patented article taken 'as a whole' has been disclosed by the prior art.

"The aggregation of old parts or elements into a new combination does not constitute invention, regardless of the added convenience or utility of the result achieved. More than the 'skill of the calling' is required. Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 91, 62 S.Ct. 37, 86 L.Ed. 58 (1941)."

■ Under Title 35 U.S.C. § 103, the scope and content of the prior art are to be determined, differences between the prior art and the claims at issue are to be determined, and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or non-obviousness of the subject matter is determined. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Upon a consideration of the subtests suggested by Graham v. John Deere, supra, it is the opinion of the Court that the subject matter of the patented invention would have been obvious to a person skilled in the development of liquid clarification systems and therefore claims 34 and 35 are void for obviousness under Title 35 U.S.C. § 103.

*Infringement.*

Pursuant to the suggestion of the United States Court of Appeals for the Seventh Circuit in Sanford Research Company v. Eberhard Faber Pen and Pencil Co., Inc., 379 F.2d 512 (7th Cir. 1967), the Court will assume arguendo the validity of the patent in suit and consider the question of infringement.

■ Assuming arguendo that the patent in suit is valid as an improvement of prior art patents, it is incumbent upon the Court to strictly limit patent rights thereunder to its precise form and elements. Murray Company of Texas, Inc. v. Continental Gin Co., 264 F.2d 65 (5th Cir. 1959). See also: Diamond Rubber Company of New York v. Consolidated Rubber Tire Co., 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527 (1910).

It is significant to note that the patent in suit specifies three essentials in the specification or description: (1) Flotation; (2) Filtration; and (3) Settling. (Col. 4,1. 64).

The Court has previously noted the evolution undergone by the plaintiff's apparatus i. e., elimination of a filter means, discontinuance of the nested arrangement, and replacement of the skimming conveyor by a trough.

It has also been previously noted that a comparison of the apparatus marketed by the plaintiff subsequent to 1956 with the apparatus marketed by the defendant discloses only superficial differ-

ences. Even the defendant's Tubo-O-Matic model, a patent for which the defendant is presently making application, differs essentially only in the choice of weir design.

■ However, infringement should not be determined by comparison of plaintiff's commercial apparatus with the defendant's commercial apparatus. It should be determined by a reading of the claims on the accused device in the light of the patent in suit, the prior art, and the file history of the patent in suit. Graham v. John Deere Co., supra.

■ Since the defendant's commercial apparatus differs from the device described in the patents in suit and is not inhibited specifically by claims 34 and 35, the Court now finds no infringement by the defendant.

*Conclusions of Law.*

1. This Court has jurisdiction of the parties and of the subject matter of this action by virtue of the patent laws of the United States and the Judicial Code.

2. Claims 34 and 35 of United States Letters Patent No. 2,861,688 are invalid and void under Title 35 U.S.C. § 103 for the reason that any differences between the claimed subject matter and the prior art are such that the subject matter as a whole would have been obvious at the time that the invention was made to a person having ordinary skill in the art.

3. The claims in suit are invalid and void because they express merely an aggregation or catalog of old elements taken from the prior art.

4. The claims in suit are not infringed by defendant's accused apparatus.

5. Defendant is entitled to judgment declaring that claims 34 and 35 of United States Letters Patent No. 2,861,688 are invalid and void.

6. It is Ordered that the complaint be dismissed.

7. Defendant is awarded its costs and disbursements with costs to be assessed against plaintiff.