**HENRY MANUFACTURING CO., INC.,**
Plaintiff-Appellant,

v.

**COMMERCIAL FILTERS CORPORA-
TION, Defendant-Appellee.**

No. 71–1456.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 20, 1972.

Decided Nov. 8, 1972.

---

Barratt O'Hara, Chicago, Ill., for plaintiff-appellant.

John L. Murphy, Crim. Div., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before SWYGERT, Chief Judge, and CUMMINGS and SPRECHER, Circuit Judges.

CUMMINGS, Circuit Judge.

After a full trial the district court, D. C., 350 F.Supp. 1015, entered judgment for the defendant and dismissed this patent infringement suit, holding that the patent sued upon was invalid for obviousness and that in any event the patent was not infringed. This appeal followed.

On November 25, 1958, patent No. 2,-861,688 was issued to Harold H. Harms for his liquid clarification system. After two earlier applications relating to this structure had been abandoned, Harms filed an application for the present patent in December 1955. In August 1957, Harms assigned all his rights in the application and any patent that might be granted therefor to plaintiff. Claims 34 and 35 of the issued patent were presented to the Patent Office by way of amendment to the application in April 1958. Earlier, in May 1957, an amendment was offered consisting of two claims disclosing a particle liquid separator admittedly similar to claims 34 and 35, but these were rejected as unpatentable over Hermann patent No. 2,469,197. These rejected claims were rewritten to define applicant's invention better and to distinguish it further from the disclosure of the Hermann patent; the rewritten claims were finally accepted as numbers 34 and 35. Alleged infringement of claims 34 and 35 is the sum and substance of the complaint.

Claim 34, divided here for convenience by the letters "a" through "h," reads as follows:

"A particle liquid separator for separating both lighter and heavier particles than the liquid from said liquid in which they are suspended, comprising:

a. a first liquid chamber permitting flotation of said lighter particles and settling of said heavier particles,

b. a first ramp means extending from a side of said first liquid chamber,

c. a first conveyor means to remove settled particles from the bottom of said first chamber up said first ramp means,

d. a skimming means to remove said lighter particles from the top of the liquid in said first liquid chamber,

e. a second liquid chamber adjacent said first liquid chamber and having at least one wall in common between the liquids in both chambers and receiving liquid from said first liquid chamber for permitting further settling of heavier particles from said liquid,

f. a second ramp means from a side of said second liquid chamber,

g. a second conveyor means to remove settled particles from the bottom of said second liquid chamber up said second ramp means, and

h. an overflow edge on one of said liquid chambers for the liquid passing from that chamber."

Claim 35 reads as follows:

"A separator according to claim 34 wherein said overflow edge comprises a plurality of parallel weir edges."

Plaintiff has manufactured and sold liquid clarification systems, more commonly known as separators, for over 14 years. The separators in question are

used to clarify or purify liquid coolant in machine tool operations. The usual coolant is a water base oil emulsion which is transferred to the separator from the machine tools with cutting chips and other debris to be separated and removed from the coolant prior to its reuse.

In its memorandum opinion, the district court described plaintiff's separator as disclosed in the patent in the following findings:

"The apparatus includes upper and lower tanks with the upper tank extending into or nesting in the lower. Separation of lighter particles is performed in the upper tank by reducing the flow of the contaminated liquid so that flotsam or lighter particles will remain on the surface where, by either the entrance of the flowing liquid into the end of the pool or by mechanical means, the flotsam is driven to one end of the tank. Simultaneously, larger sized heavier contaminants settling from the coolant are stopped by a filter screen which forms a part of the upper tank's bottom. These settled contaminants form a filter bed on the filter screen through which the liquid must pass. A float-controlled scraper or wiper-type conveyor which moves a short distance when the liquid level in the upper tank rises to a certain level scrapes along the top of the screen of the bottom of this upper pool to prevent the filter bed from becoming too thick and reducing the rate of flow of the liquid through the screen. As this conveyor removes settlings up a ramp, it simultaneously removes flotsam which has accumulated at the end of the tank. A settling step is effected in the lower tank into which the filter directly discharges

filtered liquid containing those finer, heavier solid particles which were not retained on the screen or in the filter bed. Those contaminants which sink to the bottom of the second or 'clean' liquid chamber are removed by a second conveyor means up a second ramp. The discharge of this second pool is effected by the flow of ·liquid over weir edges which maintain the liquid level in the second pool." 350 F.Supp. at 1016–1017.

Later separators sold by the plaintiff abandoned the nested tank arrangement and the filter screen between the tanks. The newer separators use adjacent side-by-side liquid chambers to accommodate fine, settlable particles which clogged the filter screen. There is no question that claims 34 and 35 read upon the side-by-side tank arrangement *sans* filter as well as the earlier nested tank configuration. Defendant allegedly copied plaintiff's later separators.

■ The district court concluded that the separators of both parties incorporated an aggregation of old elements and constituted only an improved liquid clarification system to be used in connection with cutting and grinding tools. Relying upon the teachings of seven prior art patents, the court concluded that Harms' patent was invalid because the subject matter does not involve invention. Accordingly, claims 34 and 35 were voided for obviousness under 35 U.S.C. § 103.[1] We do not reach the question whether defendant's apparatus infringed these claims because we agree with the district court's invalidity holding.

In Graham v. John Deere Company, 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed. 2d 545, the Supreme Court set forth

1. 35 U.S.C. § 103 provides:
"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

three requirements for determining obviousness under 35 U.S.C. § 103:

(1) [T]he scope and content of the prior art are to be determined;

(2) [D]ifferences between the prior art and the claims at issue are to be ascertained; and

(3) [T]he level of ordinary skill in the pertinent art [is to be] resolved.

The district court recognized that in deciding the legal issue it was bound to consider these factual matters and held that upon a consideration thereof, the subject matter of the patented invention would have been obvious to a person skilled in the development of liquid clarification systems.

▆ In reaching its conclusion as to the prior art, the court first relied on Hermann patent No. 2,469,197. Even though the Hermann patent was cited by the Patent Office it may be considered along with uncited art in determining obviousness. Skirow v. Roberts Colonial House, Inc., 361 F.2d 388, 390 (7th Cir. 1966). As has been stated, the Patent Office rejected the prior versions of claims 34 and 35 as unpatentable over Hermann.[2] The reasons given were that "These claims do not recite any structure for forming the two chambers [and that] to make the height of the weir 12

of Hermann adjustable would require no invention." Plaintiff argued to the Patent Office that its rewritten claims should be allowed despite Hermann because the latter "does not disclose two separate ramp means and separate conveyors therefor in each of the two separate liquid settling chambers as now claimed, nor does it disclose a plurality of parallel weirs as specifically claimed in claim 39 [number 35 in the issued patent]."[3] Ultimately the patent was issued containing the rewritten claims 34 and 35.

▆ Apparently recognizing the similarities of the Hermann and Harms patents, plaintiff argues that the Hermann patent is not available to the defendant as a reference because it failed to give plaintiff a 30-day pretrial notice of reliance, as provided in 35 U.S.C. § 282. As we have at least twice intimated,[4] under certain circumstances this statute permits a trial judge to receive proof of prior patents in the absence of the prescribed 30-day notice if the plaintiff is not thus deprived of an adequate opportunity to present his case. Since plaintiff itself introduced the Hermann patent into evidence and presented expert testimony in regard thereto, it was not surprised at the trial and cannot complain that the district court should not have referred to it. Moreover, plaintiff was intimately familiar with the Her-

---

2. Then numbered claims 36 and 37, the prior versions of claims 34 and 35, are as follows:

"36. A particle-liquid separator for separating both lighter and heavier particles than the liquid from said liquid in which they are suspended, comprising: a first liquid chamber permitting flotation of said lighter particles, skimming means to remove said lighter particles from said first liquid chamber, a second liquid chamber below said first liquid chamber for settling the heavier particles in said liquid, said first and second liquid chambers communicating through the bottom of said first liquid chamber, conveyor means for removing the settled heavier particles from the bottom of said second liquid chamber, an overflow edge on said second liquid chamber, means for adjusting the height

and level of said edge for controlling the liquid level of both said chambers, and means for collecting the liquid overflow from said edge.

"37. A separator according to claim 36 wherein said overflow edge comprises a plurality of parallel weir edges."

3. Compare claim 35 of the issued patent with claim 37 of the prior version rejected by the Patent Office, set forth in note 2, *supra*.

4. Sutter Products Company v. Pettibone Mulliken Corporation, 428 F.2d 639, 641–642 (7th Cir. 1970); Stiffel Co. v. Sears, Roebuck & Company, 313 F.2d 115, 116–117 (7th Cir. 1963), reversed on other grounds, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661.

mann patent because, as noted, it had been first cited by the Patent Office against the Harms application, and plaintiff had consequently rewritten its claims in an attempt to distinguish its disclosure from Hermann's.

As the district court found, the Hermann patent discloses a tank with a continuous conveyor which removes from a liquid heavier particles which settle in the tank. Lighter weight particles which float on the liquid are driven by a conveyor chain with flanges to a point at which they encounter the conveyor chain which removes the heavier particles. The clarified liquid leaves the chain under a baffle and flows over a weir to its removal point. Although admitting that the Hermann patent is the best prior art reference, plaintiff attempts to avoid it because the Hermann weir is supposedly not equivalent to an overflow edge providing a continuous quiescent pool. The attempted distinction is unpersuasive, for one of the reasons for the examiner's original rejection of Harms' claims 34 and 35 (then claims 36 and 37) was: "To make the height of the weir 12 of Hermann adjustable would require no invention." Moreover, in presenting the rewritten claims to the Patent Office, Harms sought to distinguish the Hermann patent on the basis of the duality of the chambers, ramp means and conveyors as well as the plurality of parallel wires and did not light upon any supposed, especial, continuous, quiescent pool provided by the Harms weir and unanticipated by the Hermann weir. In this connection it is noteworthy that the Hermann patent provides:

"In the operation of the apparatus, liquid, such as water containing material which floats and which tends to settle at the bottom, is discharged as in the usual way, into the distribution trough 11 from which it enters the main body of the tank, and *a liquid level is maintained at a point where the water can flow in a thin body over the weir wall 12*, the skimmer plate *13* serving to prevent any floating material from leaving the main sludge chamber." (Emphasis supplied.)

In our view, the differences between the Harms and Hermann patents merely amount to an obvious modification of the prior art.[5]

The district court also relied on six other patents which were not cited by the United States Patent Office examiner. Ashmead patent No. 1,109,159 utilizes a tank containing a liquid into which a mixture of solids is introduced. The specific gravity of the liquid is used to separate the dry solids that are removed from the tank by two separate conveyors in two compartments. The primary difference between Ashmead and Harms is that Ashmead separates solids as crushed coal and slate, whereas Harms separates debris from a liquid coolant.

Marshall patent No. 1,990,458 discloses a settling tank in which an endless conveyor is used to sweep floating contaminants along the surface of the liquid in the tank, then periodically sweeping them into a box at the end of the tank. This patent uses a settling means by which heavier particles are swept along the bottom of the tank by the same conveyor. The plaintiff's expert at least admitted that this structure could be used for the removal of contaminants from machine tool coolant "in a half-hearted way" and that it "would probably handle a large volume of liquid," though he did not believe it would remove all the solids.

Lind patent No. 2,509,933 discloses a tank and utilizes a continuous conveyor for scraping settled contaminants to a position for removal. It uses a welling-up of liquid through a series of square openings which have a saw-toothed weir, and the liquid flows over those notches through a series of channels

5. As to the presumption of validity against a file wrapper reference patent, see discussion *infra.*

which lead to an outlet pipe. When questioned whether the structure and method of this patent could be used for the same purposes as the Harms patent, plaintiff's expert replied: "I suspect that it would be useful only if you had a very small amount of coarse solids in the system."

Schmidt patent No. 838,515 discloses a sewage clearing vat and also utilizes the welling-up of liquid over weirs from which it flows into troughs. Plaintiff's expert testified that the structure of Schmidt "shows a way to handle a large volume of liquid and possibly to remove some of the settlable solids."

Landreth patent No. 1,483,667 depicts an apparatus which allows the liquid to flow through a perforated screen which catches contaminants. A series of brushes on a continuous conveyor is used to brush off the screen to keep the openings relatively clean. When asked whether the Landreth patent could be used for the same purposes as Harms', plaintiff's expert stated: "If the opening were small enough to filter out the type of solids that are dealt with in coolants, I suspect they would require a much more complex system to keep the brushes operating and clean than this one is."

The final patent relied upon by the district court as prior art is Symington No. 2,162,262 which is used to separate magnetic particles from nonmagnetic particles contained in liquids through use of an electromagnet. Notably the liquid clarified of magnetic particles forms a relatively quiescent pool whose removal is effected over an overflow weir. When asked to compare Symington with Harms, plaintiff's expert only addressed the magnetic separation, stating: "If it works, it might remove some of the magnetic materials, but it would not remove the nonmagnetic materials; therefore, it would not clean out the total quantity of liquids."

In the court below and here, defendant also relied on Alexander patent No. 2,151,578, which seeks to separate coal from impurities by suspending the solids in a liquid having a specific gravity intermediate to that of the coolant impurities, so that some of the solids would float and others would sink. The patent employs a small conveyor to skim flotsam from the surface of the liquid and uses an upper and lower tank. Also, the patent discloses three different weirs over which bodies of liquids utilized in the process escape to pursue their designated courses. The distritc court's opinion does not mention the Alexander patent.

■■ Plaintiff relies upon the presumption of validity that Section 282 of the Patent Code (35 U.S.C. § 282) accords patents. This presumption does not exist against evidence of prior art not before the Patent Office. Even one prior art reference not considered by the Patent Office can suffice to overthrow the presumption. T. P. Laboratories, Inc. v. Huge, 371 F.2d 231, 234 (7th Cir.1966). Plaintiff concedes the Harms patent is a combination patent, and where a patent combines the teachings of the prior art, it would be especially inappropriate to presume validity on the basis of a single prior patent reference cited by the Patent Office, even if it is the most pertinent, in the face of other prior patents defining the scope and state of the art from which the elements of the combination are drawn. See Hewlett-Packard Company v. Tel-Design, Inc., 460 F.2d 625, 628–629 (9th Cir. 1972). Of the above patents, only Hermann was considered by the Patent Office with respect to this application. The other seven patents briefly described, *supra*, elucidate the teachings of the prior art and demonstrate that the claimed distinctions between the Harms and Hermann patents involve elements clearly known to the prior art. Moreover, all the patents previously described support the district court's finding that plaintiff's patent is "only an improved liquid clarification system to be used in connection with cutting and grinding tools." As defendant's expert witness testified, "the filter is the only element

that is not shown in the prior art" (Tr. 93; see also Tr. 97), and of course plaintiff does not contend that its inclusion was unobvious and in fact no longer employs filters in most of its devices.

█ Plaintiff relies on the substantially improved separation resulting from its "combination of an 'overflow edge' which creates a continuous 'quiescent pool' permitting the settling of very fine particles in a second chamber which removes the settled particles." But as shown, prior patents of others employed overflow weirs and a second tank. As recently reiterated in *Hewlett-Packard Company, supra* at 629, when old elements are collated for the first time, non-obviousness is not established unless the combination of old elements produces an unusual or surprising result. See *Great A. & P. Tea Co. v. Supermarket Equip. Corp.,* 340 U.S. 147, 152, 71 S.Ct. 127, 95 L.Ed. 162. Like the district court, we are convinced that the combination of the elements of prior art here hardly produces an unusual or surprising result. Each of the elements combined in the Harms patent was known in the prior art, and Harms' combination of ideas only produced results that would be expected by one of ordinary skill in the art. Defendant's expert, Charles W. Rummler, demonstrated that all of the elements involved in Harms were fully disclosed in the prior art patents.[6] The claims in suit do not disclose differences which would be unobvious to a man working in the art. For example, Mr. Harms, plaintiff's president, replied, "I think it is the most natural thing in the world, but [defendant] Commercial Filters doesn't * * *" when he was asked, "Now, isn't it natural, if you find a trough or portion of the tank that is accumulating dust that you didn't think it would, isn't it natural to stick a conveyor in it and take it out?"

Since we are satisfied that the district court's findings amply support its conclusion that claims 34 and 35 are invalid for obviousness under 35 U.S.C. § 103, we need not consider the other arguments presented by defendant in support of the judgment below.

Affirmed.

---

6. Mr. Rummler discussed the prior art in great detail. The fact that he did not use the word "obvious" in his testimony certainly did not prevent the district court from relying thereon in finding obvious-ness under 35 U.S.C. § 103. In fact, had the witness used the expression "obvious," that might have precipitated a "legal conclusion" objection.