**The LEWART COMPANY and Lewis R. Beyer, Plaintiffs,**

v.

**ACCO INTERNATIONAL, INC., Defendant.**

**No. 72 C 2466.**

United States District Court, N. D. Illinois, E. D.

April 30, 1976.

Mann, Brown, McWilliams & Bradway, Chicago, Ill., Watts, Hoffman, Fisher & Heinke, Shapiro, Persky, Stone & Markin, Cleveland, Ohio, for plaintiffs.

Merriam, Marshall, Shapiro & Klose, Chicago, Ill., for defendant.

## MEMORANDUM OF DECISION

FLAUM, District Judge:

This decision shall constitute this court's findings of facts and conclusions of law pursuant to Rule 52(a) following trial of this action from September 2, 1975 to September 12, 1975.

This is an action for patent infringement brought by Beyer, the patent holder, and his wholly owned exclusive licensee, Lewart Company, charging defendant Acco with infringement of United States patent 3,313,304 (hereinafter referred to as the '304 patent). The '304 patent is embodied in the "Tuffy" ring binder sold by Lewart Company. The defendant Acco is charged with infringing the '304 patent by the sale in this district of the "Tally-All-Plast" ring binder manufactured by Richards Metals (not a party to this action) and distributed by Acco.

In response to the charge of infringement defendant Acco has filed a counterclaim seeking a declaration that the '304 patent in suit is invalid. The parties have entered into a stipulation that the "Tally-All-Plast" ring binder infringes the claims of the '304 patent. Thus the sole issue tried to the court is the validity of the patent in suit.

The '304 patent discloses an integral (one piece) ring binder mechanism which secures loose papers within a cover forming a booklet suitable for use in schools and businesses. The patent teaches a binder mechanism by means of a backplate with a plurality of free-ended ring members or fingers attached to one longitudinal edge of the backplate by a hinge and capable of interengaging with the other longitudinal edge of the backplate. The operation of the binder mechanism is familiar: loose papers with a configuration of holes matching the placement of the free-ended ring members

or fingers are aligned with the fingers, the fingers are drawn through the holes and joined to the opposite edge of the backplate. When the hinged fingers are thus engaged with the opposite edge of the backplate, an enclosed semi-circle perpendicular to the backplate is formed which secures the loose papers to the backplate. This one piece item is made of semi-rigid plastic (polypropylene or polyethylene) and the preferred method of manufacture is injection molding.

Defendant Acco has premised its defense to this infringement action on the alleged failure of the patent to satisfy the following requirements of the Patent Act: the subject matter claimed by the '304 patent was obvious to one with ordinary skill in the art at the time of the alleged invention (35 U.S.C. § 103); ring binders within the scope of the claims were known to and sold by others in this country and were patented prior to the claimed date of invention (35 U.S.C. § 102(a), (b)); ring binders within the scope of the '304 claims were manufactured by Beyer more than one year prior to the patent application (35 U.S.C. § 102(b)); and, the patent application failed to disclose the best mode of invention and the names of joint inventors (35 U.S.C. §§ 112, 116). As the court finds the patent invalid because it was obvious to one skilled in the art at the time of the alleged invention, the other asserted bases of invalidity need not be examined.

*Obviousness*

In *Graham v. John Deere Co.,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), the Supreme Court outlined the three step analysis required for a determination of validity under 35 U.S.C. § 103.[1]

Under § 103 the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined." 383 U.S. at 18, 86 S.Ct. at 694.

The relevant prior art is that "art to which one can reasonably be expected to look for a solution to the problem which the patented device attempts to solve." *Burgess Cellulose Co. v. Wood Flong Corp.,* 431 F.2d 505, 509 (2d Cir. 1970). As the '304 patent draws from known ring binder concepts and the hinging properties of the semi-rigid plastics, the claims of the patent in suit must be measured against the teachings of binder art and plastic molding art. *See, Mandel Bros. v. Wallace,* 335 U.S. 291, 69 S.Ct. 73, 93 L.Ed. 12 (1928); *Sanford Research Co. v. Eberhard Faber Pen and Pencil Co.,* 379 F.2d 512 (7th Cir. 1967); *Vollrath Co. v. Premium Plastics,* 385 F.Supp. 843 (N.D.Ill.1974), *aff'd* 513 F.2d 636 (7th Cir. 1975).

The claims of the '304 patent teach a ring binder comprised of a backplate and ring members or fingers integrally connected to the backplate by means of a hinge. Claim 1 discloses:

A back plate to be fastened inside a binder cover and having a first side or bottom surface to be positioned against a back of the cover and a second side or top surface that faces away from the back of the cover; a plurality of binder ring elements integral with the back plate along a first longitudinal side edge of the back plate each having a narrow finger portion and a wider base portion said wider base portion being substantially shorter than the length of the back plate and said narrow finger portion having a free end portion interengageable with the back plate adjacent a second longitudinal side edge of the back plate; and flexible hinge por-

---

1. Section 103 provides:

*Conditions for patentability; non-obvious subject matter.* A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the difference between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

tions integrally connecting the ring elements at spaced locations along the said first longitudinal side edge of the back plate, substantially thinner than the thickness of the finger and base portions of the ring elements, and located beneath the top surface of the back plate.

Dependent claims 2 through 7 disclose, respectively, the length of the hinge, a wide ring base flush with the top surface, a plurality of recesses along the first longitudinal edge wherein the wide base portion of the ring is inset, a hinge thickness between 0.01 and 0.02 of an inch and a length not greater than three times the width of the finger portion, an inset step portion in the first longitudinal edge of the backplate to accommodate the wider base portion, and a hinge location at the bottom and outer edge of the base of the ring elements.

These disclosures find counterparts in the patents issued to Phillips, Emmer, McKowen, and Goldman, in the Tally-Ho prior art device, and in the Stinson patent and plastics publications.

The Phillips patent (2,495,180), issued prior to the claimed date of invention of the patent in suit, discloses a ring binder manufactured from a flat sheet of material (fibre, plastic or paper) comprising a flat backplate with a plurality of folded ring members or fingers extending from that backplate, interengageable with a flap folded upwards from the second longitudinal edge. Phillips discloses the free-end finger concept of the '304 patent, the wide base of said finger, the interengageability of the finger with the second longitudinal edge, and the integral nature of the backplate and the fingers. Defendants also rely on the uncited Emmer patent (2,407,656) which discloses an integral plastic binding element with a backbone and a plurality of fingers. Like Phillips, Emmer is made from a thin sheet of material lightly scored to allow gentle flexing in the finger portion and heavily scored in proximity to the backbone

and the tip of the finger to allow for sharp bending or hinging along the longitudinal edges of the backplate.[2] While Phillips and Emmer are instructive conceptually, neither teaches the placement or dimension of the hinge or the recesses necessary to accommodate that placement disclosed by the '304 patent.

The cited prior art patent issued to McKowen (3,260,264) discloses a binding element with a one-piece hinge located beneath the top surface of the backplate. The placement of the hinge requires an angular sloped area at the juncture of the backplate and the finger member. While this sloping area is not identical to the recess claimed in Beyer, it teaches the use of the integral hinge at the lower surface of the backplate and discloses the need for a sloping, inset, or recessed area to accommodate the wider portion of the finger and the backplate which surrounds the hinge.

The cited Goldman patent (3,251,364), filed more than one year prior to the claimed date of invention is the most pertinent of the prior art patents. Goldman claims a one piece, semi-rigid plastic ring binder, and discloses a backplate with a plurality of free-ended ring members or fingers integrally connected to the backplate by a thin hinge of polypropylene. Goldman and the '304 patent are comprised of the same material, and they are remarkably similar in concept and design. In a hearing before the patent examiner in the prosecution of the '304 application, Goldman was distinguished in the following language: "Goldman merely shows a weakened hinge portion of an integral plastic binding element, but lacks the other claimed features (of the '304 patent) including the location of the hinge." A juxtaposition of these two patents reveals that the distinction between them is limited to the wide base portion of the ring member (which is flush with the top surface of the

2. Plaintiffs have maintained that Phillips and the uncited Emmer patent are inapposite to the '304 patent as they are made from the sheets of material rather than the latter developed semi-rigid plastics. However, for pur-

poses of the obviousness analysis, the teachings of Phillips and Emmer may be evaluated in light of the latter developed plastics. See *Frantz Mfg. Co. v. Phoenix Mfg. Co.,* 457 F.2d 314 (7th Cir. 1972).

backplate when the member is engaged with the opposite edge of the backplate) and the location of the hinge beneath the top surface of the backplate (with the inset recesses necessary to accommodate that placement) disclosed in the '304 patent.

The Tally-Ho prior art device [3] is a two piece, non-integral metal product which was manufactured and sold in this country more than one year prior to the plaintiff's claimed date of invention. It is comprised of a rigid backplate and a single journaled wire forming the ring members or fingers.

This device does not disclose an integral hinge nor a hinge which is substantially thinner than the surrounding areas. However, it does teach a centrally disposed metal hinge, located beneath the top surface of the backplate.

The Stinson patent (3,019,486), issued more than one year prior to the claimed date of invention, discloses a method for the manufacture of semi-rigid plastic hinges of polypropylene or polyethylene. The patent teaches a thin integral hinge produced by repeated flexing of the plastic material, resulting in a "necking down" of the plastic material at the hinging point. This necking down process necessarily creates a hinge substantially thinner than the area surrounding it. The patent suggests the use of this integral hinge as a replacement for multipiece metal hinging mechanisms.

The literature in the field published by various chemical companies and plastics manufacturers and circulated to persons involved in injection molding, discloses the optimum dimensions for an integral hinge made of semi-rigid plastic. (See Defendant's Exhibits 24–32). The court finds credible the testimony of Mr. Levitan that this literature was distributed to persons in the plastics industry by various manufacturers in the early 1960's, prior to the claimed date of invention. The court further finds that this literature discloses multiple uses and specifications for the use of semi-rigid plastics, and accurately reflects the state of the plastic molding art at the time of the claimed invention. Specifically, this literature teaches the replacement of multipiece metal hinges with flexible one-piece semi-rigid plastic hinges. [See Defendant's Exhibit 27.] Preferred dimensions for injection molded polypropylene and polyethylene hinges are disclosed in Defendant's Exhibits 24 and 31. The available literature in the plastic molding field in the early 1960's taught the function, use, and dimensions of integral hinges, and indicated in figures and in photographs the application of these teachings to ring binder art. [See Defendant's Exhibits 27, 31, and 32.]

This exposition of the scope and content of the pertinent prior art has served to focus on the differences between the disclosures of the '304 patent and the prior art. The plaintiff has argued that the '304 patent is distinct from the prior art as it discloses a low cost, one-piece ring binder which allows sheets to lie flat and to be easily removed or added, comprised of a rigid spine with stable and tear-resistant ring members connected to the spine in a manner which precludes pinching of sheets in the hinges. It cannot be disputed that a low cost one-piece ring binder with a rigid spine and flexible ring members which allows sheets to be easily added or removed is taught by the prior art Goldman patent. Thus the functional differences between the '304 patent and the teachings of the prior art are the stability and tear-resistance of the ring members and the connection of these members to the spine in a manner which precludes pinching of papers in the hinges. These functional distinctions arise from the wide base of the ring member and the location of the hinge beneath the top surface of the backplate.

This conclusion is equally apparent from a juxtaposition of the language of the claims of the '304 patent and the prior art patents. Claim 1 of the '304 patent teaches a binder comprised of a backplate with a plurality of ring members, integrally connected to the backplate by a flexible hinge thinner than the surrounding area, and interengageable with the opposite edge of the

3. No patent claiming the disclosures of the Tally-Ho has been placed in evidence.

backplate. The Goldman patent teaches a binding element comprised of a rigid mounting strip with a plurality of flexible loops, integrally connected to the strip by a hinge at the reduced area parallel to the edge of the strip, and interengageable with the opposite edge of the strip. Claim 1 of the '304 patent encompasses the claims of Goldman and additionally claims "a wider base portion (of the ring member) being substantially shorter than the length of the backplate and a hinge located beneath the top surface of the backplate." Claim 2 of the '304 patent discloses the length of the hinge as two or three times the width of the ring member or finger for greater stability and tear-resistance, a concept taught by the prior art Phillips patent. Claim 3 of the '304 patent discloses the wide base of the ring member which is flush with the top surface of the backplate when the ring member is engaged with the opposite edge of the backplate in the closed position. This concept may be traced to the Tally-Ho prior art device which employs a single journaled wire in a similar manner. In the Tally-Ho device the wire functions to operate the ring members simultaneously and the considerations of stability and tear-resistance, and avoiding pinching of sheets in the hinges are not concerns to which that device is directed. Claims 4 and 6 of the '304 patent teach a recessed or inset area necessary to accommodate the wide area surrounding the thin hinge. This concept is adequately disclosed by the beveled or sloped area adjacent the hinge in McKowen. Claim 5 of the '304 patent teaches the preferred dimensions of the hinge which were previously disclosed in the Stinson patent and the publications available in the plastic molding field. Claim 7 of the '304 patent teaches hinge placement at the bottom and outer edge of the base of the ring member, beneath the top surface of the backplate. A correlative concept may be found in McKowen and in the Tally-Ho prior art device. Thus consistent with the functional distinctions noted, this comparison of the claim language requires a finding that the differences between the '304 patent and the prior art are limited to the wide base of the ring member (flush with the top surface of the backplate when closed) and the location of the hinge beneath the surface of the backplate.

In ascertaining the level of ordinary skill in the art, district courts have been advised to hypothesize an inventor, sitting in his workshop "with the prior art references—which he is presumed to know—hanging on the walls around him." *Application of Winslow,* 365 F.2d 1017, 1020, 53 CCPA 1574 (1966). The content of the prior art patents and publications clearly establish that the hypothetical inventor would be familiar with the concept, use, function and dimension of the semi-rigid plastic binding element. Solutions to the problems in the art, lack of stability and tear-resistance, and pinching of sheets in the hinges, were apparent from the teachings of Phillips, McKowen, and the Tally-Ho device. The application of these ideas to the Goldman binder was well within the level of ordinary skill of the hypothetical inventor in the early 1960's.

This conclusion is further supported by the testimony of defendant's expert witness, Mr. Levitan, who was employed as a binder engineer during the 1960's. Mr. Levitan is a well qualified spokesman for the level of ordinary skill in binder art because of his direct involvement in the design and development of similar ring binders contemporaneous with the development of the patent in suit. The court finds credible Mr. Levitan's testimony that the addition of the wide base element at the juncture of the ring member and the hinge, and the location of the hinge beneath the top surface of the backplate are modifications or refinements of Goldman using the teachings of Phillips, McKowen and the Tally-Ho device, which were well within the level of ordinary skill in the art at the time of the claimed invention. The testimony of Mr. Fontinelli, a plastic molder, has also persuaded the court that the modification of the base of the ring member to increase the surface area of contact and to strengthen the connection to the backplate, is a concept of purely mechanical skill known to

plastic molders at the time of claimed invention.

Conversely, the court finds that the testimony of Mr. Beyer and Mr. Joseph is insufficient to accurately resolve the level of ordinary skill in ring binder art. Mr. Beyer and Mr. Joseph lack binding or molding experience, and both are employed in marketing and distributing the products designed by Mr. Levitan and manufactured by Mr. Fontinelli. In light of the prior art patents which speak for themselves and the testimony of Mr. Levitan and Mr. Fontinelli, the court does not accord significant weight to the Beyer and Joseph testimony as to level of skill in the ring binder art. Thus the court concludes that the level of ordinary skill in the art is such that the modifications of Goldman embodied in the '304 patent in suit are obvious within the meaning of section 103.

This court has chosen to characterize the claims of the '304 patent as a modification or improvement of the concept originally disclosed in the Goldman prior art patent. Beyer applied the concepts evident in Phillips, McKowen and the Tally-Ho device, but if the refinement fails to rise above the level of mere mechanical skill, that refinement is not a patentable invention. *Gettleman Mfg. Inc. v. Lawn n' Sport P. M. S. & S. Inc.*, 517 F.2d 1194 (7th Cir. 1975). In this regard the improvement of the '304 patent over the Goldman concept is analogous to the improvements over the prior art of the patent in *Blohm & Voss AG v. Prudential Grace Lines, Inc.*, 489 F.2d 231 (4th Cir. 1973), *cert. denied* 419 U.S. 840, 95 S.Ct. 70, 42 L.Ed.2d 67. In *Blohm & Voss* the patent taught a ship loading and unloading apparatus utilizing the well established elements of the prior art (booms, kingposts, pulleys) modifying only a certain boomhead configuration and boom-gear to increase the efficiency of operation. The court noted the level of ordinary skill in the art as established by the prior art patents and cautioned that "improvement over the prior art does not necessarily rise to the dignity of invention." 489 F.2d at 246–47. Where the improvement resulted from the

activity reasonably expected of those mechanically skilled in the applicable art, that is, where the improvement arises from modifications based on mere mechanical skill, the constitutional standard of patentability codified in section 103 is not satisfied. *Inject-O-Meter Mfg. Co. v. North Plains Fertilizer Co.*, 439 F.2d 1138, 1142 (5th Cir. 1971). After examination of the prior art patents and the testimony of Mr. Levitan and Mr. Fontinelli, the court concludes that the modifications of Goldman embodied in the patent in suit are purely mechanical in nature, thus the improvement is not patentable.

In reaching the decision that the '304 patent is invalid for obviousness the court has declined to adopt the test of patentability advanced by the defendant. Defendant has argued that the patent in suit is a combination patent, subject to the stringent test of patentability articulated by the Supreme Court in *Great A & P Tea Co. v. Supermarkets Eq. Corp.*, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950) requiring courts to "scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements." 340 U.S. at 152, 71 S.Ct. at 130. The plaintiff's post trial briefs dealt summarily with the issue, stating simply that "this invention is not a combination of old elements, in which each functions as it always has but now merely in combination. This is a new unitary structure in which a ring of different base construction cooperates in a new manner and at a new location with novel integral backplate structure." This assertion begs the question, and it is clearly untenable in light of the content of the prior art discussed above. The '304 patent may well be a combination patent, one which "combines old elements of an art often with only minor improvements to one such element." *Illinois Tool Works, Inc. v. Sweetheart Plastics, Inc.*, 436 F.2d 1180, 1187 (7th Cir. 1971). However, as the court finds the patent obvious by virtue of the *Graham* analysis and the testimony of the level of skill in the art, the more stringent combination standard need not be applied. That standard, requir-

ing that the elements combined and the very combination of those elements must be unobvious to one skilled in the art, further requires that the combination have some new, unobvious, or synergistic result in excess of mere aggregation. *Anderson's-Black Rock, Inc. v. Pavement Salvage Co.,* 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969). As the plaintiff failed to introduce evidence or direct his arguments to this stringent standard, and in light of the foregoing discussion of the prior art and the level of ordinary skill in binder art which requires a finding of patent invalidity, the court has declined to apply the stringent combination standard proposed by the defendant.

The plaintiffs have placed great reliance on secondary indicia of non-obviousness; considerations of commercial success, long felt need and copying of the product by competitors. *Graham v. John Deere Co.,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1965). The plaintiffs' evidence of commercial success educed at trial did not reflect an industry wide evaluation and failed to relate the claimed success to the alleged features of the Beyer product. The plaintiffs' evidence of long felt need was premised on the sales of the product measured by the profit recognized by the Lewart Company, but did not indicate that any pre-existing ring binder mechanisms were replaced by the Beyer products. The plaintiffs' evidence of alleged copying by competitors, particularly Richards Metal Co., was inconclusive and effectively negated by the evidence educed at trial indicating similar contemporaneous developments by Richards' employees. Thus the court finds plaintiffs' evidence of secondary considerations of non-obviousness to be factually insufficient to warrant a finding of commercial success, long felt need or copying by competitors. Assuming, arguendo, that proof of these secondary considerations had been established at trial, the law is clear that these secondary considerations cannot satisfy the test of patentability in the absence of invention. *Scott Paper Co. v. Fort Howard Paper Co.,* 432 F.2d 1198 (7th Cir. 1970).

In response to the defendant's invalidity argument, the plaintiff relies on section 282 of the Patent Act which provides that "a patent shall be presumed valid." Where the prior art relied upon by the party asserting invalidity has been considered by the patent examiner in the prosecution of the patent, the statutory presumption of validity is strong. *Henry Mfg. Co., Inc. v. Commercial Filters Corp.,* 489 F.2d 1008 (7th Cir. 1972). However, that presumption "never becomes so strong that a patent is completely unassailable". *Chicago Rawhide Mfg. Co. v. Crane Packing Co.,* 523 F.2d 452, 458 (7th Cir. 1975); *Research Corp. v. Nasco Industries,* 501 F.2d 358 (7th Cir. 1974). In *Chicago Rawhide,* the Seventh Circuit evaluated the effect of the statutory presumption of validity, noting that "a demonstration that the art considered by the Patent Office is the same as the art considered by the court strengthens the presumption in the sense that it provides the justification for the requirement that invalidity be established by clear and convincing evidence, but such a demonstration is not also a bootstrap that lifts the presumption to a still higher level." 523 F.2d at 458. The fact that the prior art patents relied upon by Acco have been cited as file wrapper references and were considered by the examiner is not determinative in the instant case as the presumption of validity has been overcome by clear and convincing proof of obviousness. *Cf. King Seeley Thermos Co. v. Tastee Freez Industries,* 357 F.2d 875 (7th Cir. 1966).

Accordingly, the court finds that the claims of the '304 patent are invalid as they were obvious to one skilled in the art at the time of the claimed invention. 35 U.S.C. § 103. As the patent is invalid, the court finds for the defendant Acco on the plaintiffs' complaint of infringement. Accordingly, judgment is entered for the defendant and the plaintiffs' complaint is dismissed with costs. In the absence of evidentiary support for an "unambiguous showing of extraordinary misconduct", the court finds an award of attorney's fees pursuant to 35 U.S.C. § 285 improper. *Airtex*

*Corp. v. Shelly Radiant Ceiling Co.*, 536 F.2d 145 (7th Cir. 1976). Thus the cross motions for an award of attorney's fees are DENIED.